UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHARLIE COLEMAN,

                Plaintiff,

v.

UNKNOWN KENT et al.,

                Defendants.

_____/

Case No. 2:23-cv-172

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.) The Court previously stayed proceedings in this case and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 4.) Early mediation was held on July 8, 2024, but the case did not settle. (ECF No. 11.) The Court, therefore, will enter an order lifting the stay and directing that collection of the filing fee begin.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the

PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred there. Plaintiff sues Captain Unknown Leach, Sergeant

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Unknown Allen, Correctional Officers Unknown Kent and Thomas O. Mohrman, and Unknown Parties, referred to as "MBP Medical."

Plaintiff alleges that on November 8, 2021, he was being released from segregation when he was stopped by Defendant Kent. (ECF No. 1, PageID.2.) Defendant Kent demanded that Plaintiff "take a signed cell evaluation sheet." (*Id.*) Plaintiff declined to do so due to "MDOC policy [requiring that the] cell . . . be inspected by [the] prisoner and authorized staff." (*Id.*, PageID.3.) Plaintiff alleges this policy is in place to "reassure [the] inmate and housing staff that no property of the state is missing, damaged, or tampered with." (*Id.*) After Plaintiff declined to take the sheet, Defendant Kent began to curse him, saying "You mother***ing n***er! Take this f***ing cell sheet before I send you back to seg!" (*Id.*) Plaintiff then told Defendant Kent that he would write a grievance for his "vulgar and offensive speech." (*Id.*) Plaintiff was then escorted to his cell by another staff member without incident. (*Id.*)

On March 5, 2022, Defendant Kent was making mail delivery rounds and gave mail to Plaintiff. (*Id.*) Per policy, Plaintiff took his mail "from the state envelope, folded it in half[,] and placed it on his bars." (*Id.*) Defendant Kent then retrieved it and walked away from Plaintiff's cell. (*Id.*)

Moments later, Plaintiff "felt a prick in his left eye while watching television." (*Id.*) Plaintiff saw a "crumbled envelope" lying on the floor of his cell. (*Id.*) He picked it up and saw Defendant Kent. (*Id.*) Defendant Kent said that he had thrown the object at Plaintiff and dared Plaintiff to counteract the assault. (*Id.*, PageID.4.) Plaintiff made direct eye contact with Defendant Kent and threatened to file a grievance. (*Id.*) Defendant Kent yelled, "Do it, and I will f*** you up again n***er." (*Id.*) Plaintiff was then taken to segregation. (*Id.*) While there, he filed a grievance about the incident. (*Id.*)

4

Plaintiff contends that on the same day of the incident (March 5, 2022), Defendant Leach "refused to review camera footage in [Plaintiff's] defense [upon] request during his review of [Plaintiff's] misconduct written by [Defendant] Kent for assault [and] battery." (*Id.*) Plaintiff told Defendant Leach that Defendant Kent had initiated the conflict and that video footage would prove that. (*Id.*) Defendant Leach responded, "I'm not requesting shit, you coward you can rot in seg." (*Id.*) Plaintiff then threatened to file a grievance against Defendant Leach. (*Id.*, PageID.5.) Defendant Leach responded, "You cannot file a grievance on a misconduct you dumb f***er," and walked away. (*Id.*)

On March 8, 2022, Plaintiff submitted a medical kite concerning the "damage to his left eye." (*Id.*) Plaintiff claims that "[h]ealth care refused to treat Plaintiff, knowing that this was a serious matter." (*Id.*) Plaintiff was delayed care for eight months, causing his eye "to heal untreated." (*Id.*)

On March 29, 2022, Defendant Allen reviewed Plaintiff about his grievance against Defendant Kent. (*Id.*) Defendant Allen stated that Plaintiff was lying in his grievance because Defendant Kent "never initiated the conflict that occurred that day and [because] Plaintiff is in segregation for misconduct assault on staff." (*Id.*) Plaintiff pointed out that if Defendant Allen had reviewed video footage, he would have seen Defendant Kent striking Plaintiff first. (*Id.*) Defendant Allen responded, "I'm never gonna go against my [colleague]. I'm not checking shit. So deal with your punishment." (*Id.*) Plaintiff claims that Defendant Allen violated his due process rights and terminated his grievance review. (*Id.*, PageID.5–6.)

On April 4, 2022, Defendant Leach denied Plaintiff's grievance. (*Id.*, PageID.6.) Plaintiff contends that Defendant Leach should not have been the one denying the grievance because of a conflict of interest caused by his denial of Plaintiff's request to review the video footage. (*Id.*)

Plaintiff claims that Defendant Leach showed bias in favor of his colleagues and is "guilty of constitutional violation[s] of subordinates." (*Id.*)

During Plaintiff's misconduct hearing, Defendant Mohrman stated that he had viewed the video footage and saw that Defendant Kent initiated the altercation on March 5, 2022. (*Id.*) Defendant Mohrman, however, still found Plaintiff guilty of assault on staff. (*Id.*) Plaintiff contends that Defendant Mohrman "failed to act to prevent unlawful conduct demonstrated on camera by [Defendant] Kent." (*Id.*)

Based on the foregoing, Plaintiff asserts the following claims for relief: (1) First Amendment retaliation, Eighth Amendment excessive force and verbal harassment, and Fourteenth Amendment "racial discrimination" claims against Defendant Kent; (2) Fourteenth Amendment due process and discrimination claims against Defendants Allen, Leach, and Mohrman; (3) a First Amendment retaliation claim against Defendant Leach; and (4) Eighth Amendment deliberate indifference claims premised upon the denial of medical care against Defendant Unknown Parties. (*Id.*, PageID.7–10.) The Court construes Plaintiff's references to discrimination to assert Fourteenth Amendment equal protection claims against Defendants Kent, Allen, Leach, and Mohrman. The court also construes Plaintiff's complaint to assert constitutional claims premised upon Defendants Allen and Leach's handling of his grievance. Plaintiff also references the Americans with Disabilities Act (ADA), asserting that he has been diagnosed with manic depression and PTSD. (*Id.*, PageID.11.) Plaintiff seeks damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

A.     **ADA Claims**

As mentioned above, Plaintiff references the ADA, asserting that he has been diagnosed with manic depression and PTSD. (Compl., PageID.11.) The Court presumes that any purported ADA claims are brought pursuant to Title II of the ADA. *See* 42 U.S.C. §§ 12131 *et seq.* Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA and the RA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by

defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs); *Diemond v. Mich. Dep't of Corr.*, No. 18-1344, 2018 WL 7890769, at *2 (6th Cir. Oct. 31, 2018) ("The ADA and RA do apply to state prisons."). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Here, however, Plaintiff has named Defendants in their individual capacities only. Moreover, Plaintiff fails to allege any facts to suggest that Defendants discriminated against Plaintiff because of any disability he may suffer. For those reasons, any purported ADA claims will be dismissed.

### B. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.     First Amendment Retaliation

Plaintiff contends that Defendant Kent violated his First Amendment rights by threatening him after Plaintiff mentioned that he would be filing a grievance. Plaintiff also contends that Defendant Leach retaliated against him by denying Plaintiff's grievance regarding Defendant Kent.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends that he engaged in protected conduct by threatening to file a grievance and then by actually filing a grievance. Plaintiff, therefore, has adequately alleged protected conduct for purposes of his retaliation claims. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). The Court considers Plaintiff's allegations regarding the second and third elements for each implicated Defendant below.

### a.     Defendant Kent

Plaintiff suggests that Defendant Kent retaliated against him by threatening to "f*** [Plaintiff] up again" after Plaintiff stated that he would file a grievance. (Compl., ECF No. 1,

PageID.4.) The Sixth Circuit has concluded that verbal harassment and minor threats do not constitute adverse action. *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003); *see also Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at *4 (6th Cir. Jul. 17, 2023) (stating "that verbal abuse, idle threats, and nonphysical harassment of prisoners, standing alone, . . . [does not] constitute an adverse action of constitutional significance"); *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."). Accordingly, because Plaintiff's allegations are not severe enough to rise to the level of adverse action, his First Amendment retaliation claim against Defendant Kent will be dismissed.

### b.    Defendant Leach

As noted above, Plaintiff suggests that Defendant Leach retaliated against him by denying the grievance Plaintiff filed regarding Defendant Kent. However, if denying a grievance was considered adverse action, every denial would give rise to liability for retaliation under the First Amendment. The grievance would be protected conduct, the denial the adverse action, and, axiomatically, the denial is motivated by the grievance.

The Sixth Circuit, however, has clearly held that the denial of grievances does not give rise to liability under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Moreover, many courts, including this one, have held that the denial or refusal to process a grievance is not adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison

grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Plaintiff's First Amendment retaliation claim against Defendant Leach will, therefore, be dismissed.

### 2.   Eighth Amendment Claims

Plaintiff contends that many of the named Defendants violated his Eighth Amendment rights in various ways.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### c.      Excessive Force

Plaintiff contends that Defendant Kent used excessive force against him, in violation of the Eighth Amendment, by throwing a crumpled envelope at Plaintiff and hitting Plaintiff's left eye.

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S.

at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); see also *Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is

"responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, Plaintiff alleges that he "felt a prick in his left eye" and experienced "irritation of his retina." (Compl., ECF No. 1, PageID.3.) While Defendant Kent's action is certainly objectionable, it is clearly *de minimis* for purposes of the Eighth Amendment. *See, e.g.*, *Baltas v. Dones*, No. 3:22-cv-38 (MPS), 2022 WL 1239989, at *11 (D. Conn. Apr. 27, 2022) (dismissing an inmate's excessive force claim premised upon his allegation that a correctional official threw "soap, toilet paper[,] and trash" at him); *Jones v. Westbrook*, No. 1:13-cv-155-FDW, 2014 WL 1609340, at *3 (W.D.N.C. Apr. 22, 2014) (rejecting an excessive force claim premised upon the inmate's allegation that the officer threw a roll of tissue paper at him). Plaintiff, therefore, may not maintain his Eighth Amendment excessive force claim premised upon his allegation that Defendant Kent threw a crumpled envelope at him.

### d.  Verbal Harassment

Plaintiff also contends that Defendant Kent's verbal harassment violated his Eighth Amendment rights. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding

that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").[2] Accordingly, Plaintiff's Eighth Amendment claims premised upon Defendant Kent's verbal harassment will be dismissed.

### e.      Denial of Medical Care

Plaintiff next faults Unknown Parties, referred to as "MBP Medical," for failing to treat his left eye after it was hit by the envelope thrown by Defendant Kent. (Compl., ECF No. 1, PageID.10.) The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is

---

[2] In *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020), the Sixth Circuit concluded that "unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threat constitute[d] conduct so objectively serious as to be 'antithetical to human dignity.'" *Id*. at 541 (quoting *Hope v. Pelzer*, 536 730, 745 (2002)). The conduct in the present case did not involve either a threat to Plaintiff's life or any demonstration of the means to carry it out, and it was not a repeated occurrence. Plaintiff identifies only two encounters with Defendant Kent over a five-month period.

violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

16

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

As an initial matter, "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable for" the incidents Plaintiff describes in his complaint. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). For that reason alone, Plaintiff's Eighth Amendment claim against "MBP Medical" is subject to dismissal.

In any event, Plaintiff's allegations are simply too conclusory to state an Eighth Amendment claim for the denial of medical care. Plaintiff does not set forth any facts regarding the injury to his eye after he was struck by the envelope. He also does not allege what information he provided in his medical kite. The Court simply cannot "infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Even if Plaintiff suffered a cut and bruise to his eye, such minor injuries do not constitute serious medical needs. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (concluding that minor lacerations, cuts, and soreness in two fingers did not constitute serious medical needs); *Blackmore*, 390 F.3d at 898 (citing cases involving minor injuries that did not support Eighth Amendment claims, including cuts and bruises resulting from a glass splinter that did not require stitches or painkillers); *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (reasoning that the failure to treat "the sorts of ailments [including scrapes and bruises]

for which many people who are not in prison do not seek medical attention—does not . . . violate the Constitution"). Accordingly, Plaintiff's Eighth Amendment claims against Unknown Parties, referred to as "MBP Medical," will be dismissed.

### 3. Fourteenth Amendment Claims

#### a. Procedural Due Process

Plaintiff contends that Defendants Leach and Mohrman violated his Fourteenth Amendment due process rights during misconduct proceedings. Specifically, Plaintiff faults Defendant Leach for not reviewing the camera footage, and faults Defendant Mohrman for finding Plaintiff guilty despite camera footage showing that Defendant Leach instigated the incident.

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Plaintiff alleges that he was found guilty of assault, which is a class I misconduct. *Id.*, Attach. A. Plaintiff, however, does not allege that this misconduct conviction had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2012 and 2008 for crimes committed in 2011 and 2007. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=379771 (last visited July 24, 2024). For a prisoner like Plaintiff, who is serving a sentence for an offense committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." Mich.

Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, the misconduct conviction had no impact on the duration of Plaintiff's sentence.

To the extent that Plaintiff was placed in segregation pending his misconduct hearing, confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (finding that 61 days in segregation was not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have

been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

While Plaintiff may have been housed in segregation pending his misconduct hearing, he does not allege that he was sanctioned to detention as a result. In fact, Plaintiff does not allege any facts at all regarding what sanctions he received and, therefore, fails to suggest that the misconduct conviction resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. Plaintiff's Fourteenth Amendment due process claims against Defendants Leach and Mohrman will, therefore, be subject to dismissal.

### b.  Substantive Due Process

Plaintiff's complaint can also be construed to assert substantive due process claims against Defendants. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here,

20

Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims. Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### c. Equal Protection

Plaintiff alleges that Defendants Kent, Allen, Leach, and Mohrman violated his Fourteenth Amendment rights by discriminating against him. Plaintiff suggests that Defendant Kent discriminated against him because of his race, citing Defendant Kent's "vulgar racial comments." (ECF No. 1, PageID.8.) The Court has construed those references to assert Fourteenth Amendment equal protection claims. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v.*

*Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

Plaintiff, however, fails to identify any comparative prisoners. Instead, his allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. In sum, Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination).

Moreover, to the extent Plaintiff intended to assert a class-of-one equal protection claim, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801

F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Again, even viewing Plaintiff's equal protection claims as class-of-one claims, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts suggesting that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim. Accordingly, his Fourteenth Amendment equal protection claims will be dismissed.

### 4.     Claims Regarding Handling of Grievance

The Court has construed Plaintiff's complaint to assert constitutional claims against Defendants Allen and Leach premised upon their handling of Plaintiff's grievance. Plaintiff suggests that Defendant Allen violated his due process rights during the grievance review process by refusing to view the camera footage. He also contends that Defendant Leach violated his rights by denying the grievance.

As an initial matter, § 1983 liability may not be imposed simply because a supervisor or staff member denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Allen and Leach did anything more than reject his grievance.

Moreover, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81

F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).

Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,*

461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*,

No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty

interest in the grievance process, Defendants Allen and Leach's conduct with respect to Plaintiff's

grievances did not deprive him of due process.

Furthermore, Plaintiff's First Amendment right to petition the government was not violated

by Defendants Allen and Leach's conduct during the grievance review process. The First

Amendment "right to petition the government does not guarantee a response to the petition or the

right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183

F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271,

285 (1984) (holding the right to petition protects only the right to address government; the

government may refuse to listen or respond).

Finally, Defendants Allen and Leach's actions have not barred Plaintiff from seeking a

remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional

right to assert grievances typically is not violated when prison officials prohibit only 'one of

several ways in which inmates may voice their complaints to, and seek relief, from prison officials'

while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–

16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6

(1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the

judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had

been improperly prevented from filing a grievance, his right of access to the courts to petition for

redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file

institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants Allen and Leach based on their conduct during the grievance review process.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   August 6, 2024                              /s/ *Maarten Vermaat*
                                                     Maarten Vermaat
                                                     United States Magistrate Judge